David **NEIFELD**, Appellant,

v.

Meyer **STEINBERG**.

David **NEIFELD**

v.

Meyer **STEINBERG**, Appellant.

Nos. 18274, 18275.

United States Court of Appeals, Third Circuit.

Argued Sept. 17, 1970.

Decided Feb. 19, 1971.

Pace Reich, Modell, Pincus, Hahn & Reich, Philadelphia, Pa., for David Neifeld.

Daniel J. Murphy, Takiff, Bolger & Murphy, Philadelphia Pa. (Harry A. Takiff, Joseph J. Weisenfeld, Philadelphia, Pa., on the brief), for Meyer Steinberg.

Before BIGGS, SEITZ and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

At No. 18,274, Neifeld appeals from an order of the District Court granting Steinberg's motion to dissolve a Writ of Foreign Attachment and granting Steinberg's motion to dismiss the action. At No. 18,275, Steinberg appeals from an order denying him injunctive relief.

The facts can be stated as follows: On April 7, 1969, Neifeld filed a complaint in the Court of Common Pleas of Philadelphia County, alleging that Steinberg had breached a contract to sell and deliver to Neifeld 6,000 shares of common stock of Total Energy Leasing Corporation (TELCO), a company in which Steinberg was the principal stockholder and chairman of the Board of Directors. The suit was commenced by having the Sheriff serve a Writ of Foreign Attachment (12 P.S.Appendix R.C.P. 1252) upon a Philadelphia stockbroker, Suplee, who held some of Steinberg's securities. The Sheriff, however, failed to make a manual seizure of the securities.

On May 29, 1969, Steinberg removed the case to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1441(a). On the same date, Steinberg filed an answer in which he asserted that the court lacked personal jurisdiction over him, that venue was improperly laid in that court and that there was insufficient process as to the attempted seizure of his securities. In the same pleading Steinberg also filed a counterclaim against Neifeld alleging that Neifeld had improperly used confidential information belonging to TELCO. Steinberg requested the court to enter either an or-

der rescinding the contract which was the basis of Neifeld's suit or to award damages to Steinberg.

■ On June 27, 1969, Neifeld filed a motion to strike Steinberg's defenses respecting personal jurisdiction, venue and service of process on the ground that Steinberg, by filing the counterclaim, had submitted to the jurisdiction of the court.[1] On July 3, 1969, Steinberg filed an amended answer pursuant to Rule 15 (a) of the Federal Rules of Civil Procedure, 28 U.S.C., by which he purported to withdraw his counterclaim against Neifeld.[2,3] On July 11, 1969, argument was had on Neifeld's motion to strike Steinberg's defenses and on August 28, 1969, the District Court (Judge Higginbotham) denied the motion reasoning that "since the counterclaim has been withdrawn, [Neifeld] is not entitled to any special advantage which might occur in a situation where a counterclaim is being maintained by a defendant."

On the same day the District Court denied Neifeld's motion to strike, Steinberg filed a motion to dissolve the Writ of Foreign Attachment for failure of Neifeld to comply with 12A P.S. § 8–317 (Pa.U.C.C.) which requires manual seizure of the shares to effect a valid attachment.[4] On September 4, 1969, Steinberg filed a motion to dismiss the complaint for lack of *in personam* or *in rem* jurisdiction. At the argument on these two motions on September 12, 1969, Steinberg also requested the court to enjoin Neifeld from further attempts to attach Steinberg's securities. On September 23, 1969, the District Court (Judge Luongo) granted Steinberg's motion to dissolve the Writ of Foreign Attachment and his motion to dismiss the complaint. The court, however, denied Steinberg's request for injunctive relief.[5]

## I. NEIFELD'S APPEAL

[2] In considering the issue raised by Neifeld in his appeal we must first answer the threshold question as to what

1. The record shows that on June 2, 1969, Steinberg filed a notice to take the oral deposition of Neifeld and Robert B. Cosden, Vice-President of Suplee, Mosley, Close and Kerner, Inc., the stock brokerage firm upon whom the Sheriff issued the Writ of Foreign Attachment. On June 20, 1969, Steinberg filed another notice to take the oral deposition of one Robert Seltzer. The depositions of Neifeld and Cosden were scheduled for July 7, 1969, while the deposition of Seltzer was scheduled for July 1, 1969. The record fails to show whether these depositions were taken. But even if these depositions were taken, this would not constitute a "general appearance" or a waiver of the venue defense. See Blank v. Bitker, 135 F.2d 962 (7 Cir. 1943); 8A J. Moore, Federal Practice ¶ 12.12, at 2327 (2d ed. 1968).

2. The withdrawal was explicit. The heading of the document recites "Amended Answer Pursuant to Rule 15(a) Omitting Seventh Defense and Counterclaim."

3. Rule 15(a) states in relevant part: "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served * * *." As of July 3, 1969, no responsive pleading to the counterclaim had been served by Neifeld. Since Neifeld's motion to

strike Steinberg's defenses does not constitute a responsive pleading, Kelly v. Delaware River Joint Commission, 187 F.2d 93, 94 (3 Cir. 1951), cert. denied, 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614 (1951), Steinberg asserts that he withdrew his counterclaim as a matter of right.

4. 12A P.S. § 8–317 of the Pennsylvania Uniform Commercial Code states: "No attachment or levy upon a security or any share or other interest evidenced thereby which is outstanding shall be valid until the security is actually seized by the officer making the attachment or levy * * *."
   In his brief Neifeld concedes that the District Court was correct in quashing the Writ of Foreign Attachment. We need not consider this issue.

5. On September 24, 1969, one day after the order of the District Court dismissing the complaint, Neifeld filed a new Writ of Foreign Attachment and a new complaint in the Court of Common Pleas of Philadelphia County. This time the Sheriff manually seized the securities. This action also was removed to the District Court by Steinberg on October 15, 1969. On November 14, 1969, all proceedings therein were stayed pending the outcome of this appeal.

body of law this court should look in order to ascertain the applicable rule. The issue raised by Neifeld is whether the joinder of a permissive counterclaim with the defenses of lack of jurisdiction over the person, lack of venue, insufficiency of process and insufficiency of service of process (jurisdictional defenses), is a waiver of these defenses where the defendant later withdraws the counterclaim without leave of court.

In Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the Supreme Court, confronted with a case where the applicable federal rule of civil procedure was in direct collision with the procedural rule of the state where the district court was sitting, held that if a federal rule of civil procedure (Rule 4(d) (1)) governed a matter of practice or pleading in federal courts, then the rule must be applied even if application of a state rule would require a different result. As will appear at a later point we have concluded that although the Federal Rules of Civil Procedure do not expressly cover the situation at bar, they do so implicitly. Rules 12(b) and (h) manifest an intent to "occupy the field" with respect to questions relating to the waiver of jurisdictional defenses by a defendant. The policy behind Rule 12(b) —avoidance of the necessity for making a "special appearance"—is no less applicable because the defendant has asserted a permissive counterclaim.

Moreover, even if the Federal Civil Rules did not implicitly cover the instant case, we would not be obliged to follow Pennsylvania procedure. Hanna v. Plumer indicates that the outcome-determination test enunciated in Guaranty Trust Co. of New York v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945), must be read with reference to the twin aims of the principle of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938): "discouragement of forum-shopping and avoidance of inequitable administration of the laws." 380 U.S. at 468, 85 S.Ct. at 1142.

While it is true that the application of Pennsylvania procedural rules would alter the outcome of the litigation, the difference between the federal rule and the Pennsylvania Rule "would be of scant, if any, relevance" to Steinberg's decision to litigate in the state court or to remove to the federal court. 380 U.S. at 469, 85 S.Ct. at 1143. Similar to the plaintiff in *Hanna*, Steinberg, in choosing his forum, "was not presented with a situation where application of the state rule would wholly bar recovery"; rather adherence to the state rule would have resulted only in altering the way in which Steinberg would have raised his jurisdictional defenses. 380 U.S. at 469, 85 S.Ct. at 1143. Instead of asserting all the defenses in his answer he would have been required to raise the defense of lack of personal jurisdiction by "preliminary objection." See 12 P.S. App. R.C.P. 1017(b) (1), 1032; 1 Goodrich & Amram, Standard Pennsylvania Practice § 1017(b)–3, at 70–73 and § 1032–2, at 216–17 (1960); C. E. Williams Co. v. Henry B. Pancoast Co., 412 Pa. 166, 169–170, 194 A.2d 189, 190–191 (1963). Therefore, we do not think that application of a federal rule dealing with waiver of jurisdictional defenses will encourage forum-shopping. Furthermore, we cannot conclude that our decision will alter "the mode of enforcement of state-created rights in a fashion sufficiently 'substantial' to raise the sort of equal protection problems to which the Erie opinion alluded." See and compare Hanna v. Plumer, *supra,* at 469, 85 S.Ct. at 1143.

Since we have determined that federal law governs the resolution of the issue raised by Neifeld's appeal, we will now examine the difficult problems presented. Neifeld argues that the filing of the permissive [6] counterclaim by

---

6. We hesitate to classify Steinberg's counterclaim as permissive for it implies that he had standing to assert it. It is probably more accurate to classify it as a non-compulsory counterclaim.

Rule 13(a) (2) states that a defendant need not assert a counterclaim in an action commenced by attachment. Additionally, Steinberg's counterclaim was not compulsory since he lacked standing to

Steinberg constituted a submission by him to the jurisdiction and venue of the District Court. Steinberg rebuts this argument by contending that a syllogistic reading of Rules 15(a) and (c) dictates that a counterclaim was not before the court *ab initio* since Rule 15(c) states that an amended pleading relates back to the date of the original pleading.[7] We agree with the conclusion sought by Steinberg and hold that the assertion of a permissive counterclaim in the same pleading in which a defendant raises defenses of lack of jurisdiction over the person, lack of venue, insufficiency of process and inadequate service of process does not constitute a waiver of these defenses where the defendant later validly withdraws the counterclaim without leave of court.

Want of personal jurisdiction and lack of venue can be waived by consent or conduct of the defendant. Hoffman v. Blaski, 363 U.S. 335, 343, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); 1A W. Barron & A. Holtzoff, Federal Practice and Procedure With Forms § 370, at 509–10 (rules ed. C. Wright 1960). Prior to the adoption of the Federal Rules of Civil Procedure it was also clear that the filing of a counterclaim by a defendant prevented that defendant from successfully objecting to the plaintiff's claim on the basis of lack of personal jurisdiction or venue. In Merchants Heat and Light Co. v. J. B. Clow & Sons, 204 U.S. 286, 287, 27 S.Ct. 285, 51 L.Ed. 488 (1907), one of the questions presented to the Supreme Court was whether the defendant submitted to the jurisdiction of the court by pleading a set-off and counterclaim. The Court held that "by setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action, and, by invoking, submitted to it." *Id.* at 289, 27 S.Ct. at 286. See, also, American Mills Co. v. American Surety Co. of New York, 260 U.S. 360, 43 S.Ct. 149, 67 L.Ed. 306 (1922). The question remaining is whether this procedural rule enunciated in *Merchants Heat and Light Co.* was changed by the Federal Rules of Civil Procedure.

Rule 12(b) states in part: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: * * * (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process * * * *No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion.* * * * *"* (Emphasis added.) While Rule 12(b) allows a defendant to answer to the merits in the same pleading in which he raises a jurisdictional defense without waiving the jurisdictional defense, it does not specifically authorize a defendant to couple a counterclaim with a jurisdictional defense without waiving the jurisdictional defense. Although at least two courts interpreted the quoted rule to mean that a "counterclaim" refers back to "[e]very defense" and that a counterclaim is a "defense or objection" which may be asserted with other defenses or objections without waiving them (Keil Lock Co. v. Earle Hardware Mfg. Co., 16 F.R.D. 388 (S.D.

---

assert it. The important point, however, is that Steinberg was not required to assert it in his answer or risk waiver. See Rule 13(a), Fed.R.Civ.Proc., 28 U.S.C.

7. Rule 15(c): "Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

In respect to relation back, see Reynolds Jamaica Mines v. La Societe Navale Caennaise, 239 F.2d 689, 692 (4 Cir. 1956). Cf. Etablissements Neyrpic v. Elmer C. Gardner, Inc., 175 F.Supp. 355 (S.D.Tex.1959), referred to at a later point in this opinion.

N.Y.1954); [8] Sadler v. Pennsylvania Ref. Co., 33 F.Supp. 414 (W.D.S.C.1940)), a close analysis of the language demonstrates that these courts were in error. It seems reasonably clear that "counterclaim" refers back to "claim for relief in any pleading," rather than to "[e]very defense." The phrase "whether a claim, counterclaim, cross-claim or third-party claim" is all-inclusive and this means that the foregoing phrase must refer back to "claim for relief" since filing a claim, counterclaim, cross-claim, or third-party claim are the only methods of stating a claim for relief. Accord: Hasse v. American Photograph Corp., 299 F.2d 666, 668–669 (10 Cir. 1962); Globig v. Greene & Gust Co., 193 F.Supp. 544, 549 (E.D.Wis.1961); Beaunit Mills, Inc. v. Industrias Reunidas F. Matarazzo, S. A., 23 F.R.D. 654, 656 (S.D.N.Y.1959). Also see 1A W. Barron & A. Holtzoff, Federal Practice and Procedure With Forms § 370.2, at 535–36 (rules ed. C. Wright 1960). Moreover, Rule 8(c) expressly distinguishes between a defense and a counterclaim.[9] Thus, there is nothing in the language of Rule 12(b) which *specifically* shields the defenses of lack of personal jurisdiction and improper venue from waiver when these defenses are joined with a counterclaim.

Although Rule 12(b) does not specifically shield these jurisdictional defenses, the Rule implicitly authorizes a defendant to join these defenses with a counterclaim without waiving these defenses. Rule 12(b) provides a defendant with the option of raising jurisdictional defenses by motion or by answer. If we were to take the position that a defendant, by raising his jurisdictional defenses in the same pleading in which he asserted a counterclaim, waived his jurisdictional defenses, we would in effect be engrafting a judicial exception to Rule 12(b). We would be requiring a defendant to raise his jurisdictional defenses by motion when he intends to file a counterclaim in his responsive pleading.[10] This requirement would be contrary to the option provided to the defendant in Rule 12(b).[11]

8. This was an action for damages for patent infringement in which the defendant coupled his counterclaim with a defense of lack of personal jurisdiction and an answer to the merits. Defendant's motion to quash service of process and to dismiss for lack of jurisdiction was granted despite plaintiff's argument that the defendant had submitted to the jurisdiction of the court: "Rule 12(b) * * * expressly provides that every defense available to a party, including a counterclaim, shall be asserted in a responsive pleading and that no defense or objection is waived by being joined with another. Thus the distinction between special and general appearances is abolished. [Citations omitted]. The defense of want of jurisdiction of the person is not waived by being joined in the answer with a defense to the merits or with a counterclaim."

9. Rule 8(c) states in relevant part: "When a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

10. If Steinberg had raised his jurisdictional defenses by motion prior to filing his answer, there would clearly have been no waiver. Knapp-Monarch Co. v. Dominion Elec. Corp., 365 F.2d 175, 177 (7 Cir. 1966); North Branch Prods., Inc. v. Fisher, 109 U.S.App.D.C. 182, 284 F.2d 611, 615 (1960), cert. denied 365 U.S. 827, 81 S.Ct. 713, 5 L.Ed.2d 705 (1961), noted in 63 W.Va.L.Rev. 287 (1961).

11. It should also be noted that when the rule makers wanted to attach "waiver" consequences in certain situations, they did so explicitly. Rule 12(h) (1) states that the defenses of lack of personal jurisdiction, improper venue, insufficiency of process and insufficiency of service of process are waived if they are not included in a preliminary motion under Rule 12 as required by Rule 12(g) or, if no such motion is made, if they are not included in the responsive pleading or an amendment as of right to that pleading pursuant to Rule 15(a). In the case at bar, Steinberg asserted his jurisdictional defenses in his responsive pleading. If we found that the mere filing of a counterclaim in the same responsive pleading that raised jurisdictional defenses constituted a waiver of these jurisdictional defenses, we would be add-

Furthermore, the policy behind Rule 12(b) militates against our finding a waiver where a defendant files a counterclaim in the same pleading in which he asserts jurisdictional defenses. The purpose behind Rule 12(b) is to avoid the delay occasioned by successive motions and pleadings and to reverse the prior practice of asserting jurisdictional defenses by "special appearance." 5 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1362, at 647–48 (1969). Judge Maris clearly articulated the changes which Rule 12(b) made in his seminal opinion in Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871 (3 Cir.), cert. denied 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944); "Rule 12 has abolished for the federal courts the age-old distinction between general and special appearances. A defendant need no longer appear specially to attack the court's jurisdiction over him. He is no longer required at the door of the federal courthouse to intone that ancient abracadabra of the law, de bene esse, in order by its magic power to enable himself to remain outside even while he steps within. He may now enter openly in full confidence that he will not thereby be giving up any keys to the courthouse door which he possessed before he came in." *Id.* at 874.

If we were to find a waiver in a case, such as the instant one, we would, in effect, be requiring a defendant to make what amounts to a "special appearance" for we would be requiring him to raise his jurisdictional defenses before answering to the merits. This result would be insupportable unless there were an important countervailing policy militating in favor of a waiver. Neifeld argues that a party who invokes the power of the court asking for affirmative relief should not be allowed the inconsistent objection that the forum is personally inconvenient for him.[12] In other words, he argues that when Steinberg filed his counterclaim in the same pleading in which his jurisdictional defenses appeared, he utilized the court facilities in a manner inconsistent with his objections to personal jurisdiction, venue, and service of process.[13]

ing by judicial rule another situation when jurisdictional defenses are waived.

12. Rule 8(e)(2) which allows a defendant to assert inconsistent defenses in the same pleading has no direct bearing upon the issue involved in this case for, as mentioned previously, a counterclaim is not a defense. It is, however, another manifestation of the liberal pleading philosophy of the Federal Rules of Civil Procedure. See Charles Rubenstein, Inc. v. Columbia Pictures Corp., 14 F.R.D. 401 (D.Minn.1953); cf. Goodall-Sanford, Inc. v. Landers Corp., 187 F.2d 639, 38 C.C.P.A. 891 (1951) (permitting pleading of inconsistent defense and counterclaim); New York Clothing Mfrs. Exch. v. Shikler, 10 F.R.D. 582 (E.D.N.Y.1950) (same).

13. Neifeld's argument has in fact been accepted by the majority of courts that have considered this problem. In Hook & Ackerman, Inc. v. Hirsh, 98 F.Supp. 477 (D.D.C.1954), involuntary plaintiffs in patent infringement litigation filed an answer in which they joined two defenses of lack of personal jurisdiction and improper venue with a counterclaim against the plaintiffs. The involuntary plaintiffs unsuccessfully attempted to have the action dismissed for lack of jurisdiction and improper venue. The court denied the motion and held: "Although rule 12(b) permits the joinder of the defense of lack of jurisdiction with any defense on the merits and therefore a party although actually before the court does not waive his jurisdictional defenses, it would not appear that this liberality afforded by the Federal Rules of Civil Procedure *may be extended to a situation where,* as here, the party files a counter action seeking affirmative relief. In such a case the party submits himself to the jurisdiction of the court. * * *" *Id.* at 478. Another case in which a defendant asserted lack of personal jurisdiction and improper venue in the same pleading with a counterclaim is Beaunit Mills, Inc. v. Industrias Reunidas F. Matarazzo, S.A., *supra.* The court, after discussing the nonapplicability of Rule 12(b), held that the seeking of affirmative relief by a party waives any jurisdictional defense. In Winslow Mfg. Co. v. Peerless Gauge Co., 202 F.Supp. 931 (N.D.Ohio 1958), the court held that the filing of a counterclaim after the defendant had challenged the venue of the court was suffi-

We find this argument unconvincing in the light of the peculiar facts of the case at bar. As stated earlier, Steinberg filed an amended answer pursuant to Rule 15(a) in which he omitted the counterclaim. Although both Steinberg and the District Court relied upon Rule 15, when in fact the issue should have been governed by Rule 41(a) [14] and (c),[15, 16] we will treat Steinberg's amendment as

cient to waive the challenge of venue impropriety. Finally, there are a number of other cases which have indicated that a party waives his jurisdictional defenses by asserting a counterclaim, Freeman v. Bee Mach. Co., 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943) (waiver of venue); Thompson v. United States, 312 F.2d 516 (10 Cir. 1962), cert. denied, 373 U.S. 912, 83 S.Ct. 1303, 10 L.Ed.2d 414 (1963) (waiver of venue); Switzer Bros., Inc. v. Chicago Cardboard Co., 252 F.2d 407 (7 Cir. 1958) (waiver of venue); Rubens v. Ellis, 202 F.2d 415 (5 Cir. 1953) (waiver of venue); Textron, Inc. v. Maloney Crawford Tank & Mfg. Co., 252 F.Supp. 362 (S.D.Tex.1966) (waiver of venue); Goldberg. v. Wharf Constructors, 209 F.Supp. 499 (N.D.Ala. 1962) (waiver of venue); Noerr Motor Freight, Inc. v. Eastern R. R. Presidents Conf., 155 F.Supp. 768, 838 (E.D.Pa. 1957), affirmed, 273 F.2d 218 (3 Cir. 1959), reversed on other grounds, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) (waiver of personal jurisdiction and venue); Efentakis v. S/T World Legion, 165 F.Supp. 773, 775 (E.D.Va. 1958) (waiver of personal jurisdiction) (dictum), or by impleading another party; Globig v. Greene & Gust Co., 193 F.Supp. 544 (E.J.Wis.1961) (waiver of personal jurisdiction).

There is a paucity of reasoning in each of the aforementioned cases with no discussion of the policy behind Rule 12(b), i. e., the abolition of special appearances. Also, each one of these cases is distinguishable from the instant case in that none of the counterclaimants in these cases attempted to voluntarily dismiss or withdraw their counterclaims at any time during the litigation.

The only cases which have found no waiver of jurisdictional defenses are those cases where the defendant asserted a compulsory counterclaim. Dragor Shipping Corp. v. Union Tank Car Co., 378 F.2d 241 (9 Cir. 1967) (no waiver of personal jurisdiction); Hasse v. American Photograph Corp., 299 F.2d 666, 668–669 (10 Cir. 1962) (no waiver of personal jurisdiction); Baltimore & Ohio R. Co. v. Thompson, 80 F.Supp. 570 (E.D.Mo. 1948), affirmed on other grounds, 180 F.2d 416 (8 Cir. 1950) (no waiver of venue). Also see 5 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1397, at 878–80 (1969); 59

Colum.L.Rev. 1094 (1959). In *Dragor Shipping Corp., supra*, the rationale of finding no waiver is succinctly stated: "Under Rule 13(a) a party who fails to plead a compulsory claim against an opposing party is held to have waived such claim and is precluded by res judicata from bringing suit upon it again. [Citation and footnote omitted]. However, since such a party has no alternative but to submit his compulsory claim against an opposing party, or lose it, his act in asserting it does not constitute a waiver of any jurisdictional defense he previously or concurrently asserts." 378 F.2d at 244.

While we agree that a defendant's case is even stronger for finding no waiver when a jurisdictional defense is combined with a compulsory counterclaim, we do not think that we should find a waiver simply because the counterclaim in the instant case is not compulsory. Rule 13(b) does not place any restrictions on a defendant's right to assert a permissive counterclaim. Nor does Rule 13(b) mention any untoward procedural results (such as waiver) which will be occasioned by the assertion of a permissive counterclaim.

14. Rule 41(a): "Voluntary Dismissal: Effect Thereof. (1) *By Plaintiff; by Stipulation.* Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs * * *."

15. Rule 41(c): "Dismissal of Counterclaim, Cross-Claim, or Third-Party Claim. The provisions of this rule [41] apply to the dismissal of any counterclaim, cross-claim, or third-party claim. A voluntary dismissal by the claimant alone pursuant to paragraph (1) of subdivision (a) of this rule shall be made before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing."

16. Rule 15(c) applies in a situation where a claim or defense omitted in the original answer is asserted in the amended answer. In the instant case, no claim or defense was asserted by Steinberg in his amended answer. On the contrary, as we

the equivalent of a motion for a voluntary dismissal of his counterclaim. Reynolds Jamaica Mines v. La Societe Navale Caennaise, 239 F.2d 689, 692 (4 Cir. 1956); Etablissements Neyrpic v. Elmer C. Gardner, Inc., 175 F.Supp. 355, 358 (S.D.Tex.1959). Since Neifeld had not served a responsive pleading to Steinberg's counterclaim, under Rules 41(a) and (c), Steinberg had the right to voluntarily dismiss his counterclaim without order of court. Thus, it cannot be forcefully argued that Steinberg utilized the District Court's facilities in any meaningful sense, for he was entitled to dismiss his counterclaim on his own without petitioning the court for approval.[17]

The order of the District Court granting Steinberg's motion to dissolve the Writ of Foreign Attachment and to dismiss Neifeld's suit will be affirmed.

## II. STEINBERG'S CROSS-APPEAL

■■ Since we have determined that the District Court correctly decided the issues raised by Neifeld's appeal, we must now consider whether it was also

---

have said, a claim appearing in Steinberg's original answer was omitted in the amended answer.

17. We need not decide whether the result would have been different if Neifeld had served a responsive pleading to Steinberg's counterclaim and Steinberg had been required to get leave of court in order to dismiss his counterclaim, although we do recognize that Neifeld's argument with respect to invoking the court's jurisdiction would be entitled to more serious consideration in that situation. See, *e. g.*, Kincade v. Jeffery-DeWitt Insulator Corp., 242 F.2d 328, 332 (5 Cir. 1957): "One who comes into court seeking relief against the plaintiff by cross-bill or counter claim and *actively presses his claim* thereby invokes the court's jurisdiction in the case so that he cannot thereafter question the authority of the court to pass upon all questions raised between himself and his adversary." (Emphasis added.) But even in the situation where the plaintiff has already filed a responsive pleading to the counterclaim, defendant's counterclaim can be treated as conditional, its assertion being hypothecated upon an adverse ruling on the defendant's jurisdictional defenses. See, *e. g.*, In re Industrial Associates, Inc., 155 F.Supp. 866 (E.D.Pa.1957); note 12, *supra*. Such treatment would certainly be consonant with a defendant's expectations. Furthermore, because the jurisdictional defenses can be heard and determined before trial on the application of any party (Rule 12(d)), the objection that the plaintiff will be unable to determine how to prepare his case is avoided, and neither party is forced to prepare for a trial that may never materialize.

Finally, we are not impressed with the dictum appearing in a Fourth Circuit case which seems to be contrary to the conclusion reached by us. In Reynolds Jamaica Mines v. La Societe Navale Caennaise, 239 F.2d 689 (1956), the plaintiff sought damages from the defendant for the failure of the defendant to fully perform its contract with the plaintiff. Although the contract contained an arbitration clause, the defendant's answer failed to mention this. The answer did, however, contain a counterclaim against the plaintiff. Later, the defendant, with leave of court, filed an amended answer under Rule 15(a) which explicitly omitted the counterclaim and pleaded as a separate defense the provisions of the contract dealing with compulsory arbitration. The District Court dismissed the complaint in spite of the plaintiff's argument that the defendant "by filing an answer and a counterclaim irrevocably submitted to the jurisdiction of the [court], waived the defense of arbitration, and could not, over [plaintiff's] objection, escape that jurisdiction by filing an amended answer which withdrew the counterclaim, and set up the defense of arbitration." *Id.* at 692. The court concluded that the question here was not one of personal jurisdiction but was concerned only with subject matter jurisdiction. The court conceded, however, that if the case involved lack of personal jurisdiction, the defendant, by setting up a counterclaim, became a plaintiff and thus invoked and submitted to the jurisdiction of the court. The court concluded that the *Merchants Heat and Light Co.* case, *supra*, would then be applicable and stated: "If the submission to the court's jurisdiction inherent in filing the counterclaim in the case at bar were a submission of [the defendant] to the processes of the court *we assume jurisdiction thus obtained could not be unilaterally withdrawn by [the defendant]*." (Emphasis added.) *Id.* at 692. This dictum is supported by no reasoning.

correct in disposing of the issue raised by Steinberg's cross-appeal. In Steinberg's motion to dissolve the Writ of Foreign Attachment for failure of the Sheriff to manually seize the shares in the hands of the Philadelphia brokerage firm, Steinberg also requested that the court "direct the Garnishee to deliver promptly to Defendant his securities now in Ganishee's possession, and in the interim to restrain Plaintiff from instituting any legal action designed to attach said securities in Garnishee's possession." On September 23, 1969, the District Court denied Steinberg's request. On September 24, 1969, Neifeld filed a new Writ of Foreign Attachment and a new complaint in the Philadelphia Court of Common Pleas.[18]

Steinberg contends in his cross-appeal that since the Sheriff in making the original attachment failed to seize the securities in accordance with 12A P.S. § 8–317 of the Pennsylvania Uniform Commercial Code,[19] Neifeld should be forever barred from further attempts to attach the identical res for the identical cause of action.

Neifeld has suggested that the issue raised by the cross-appeal has become moot since he has already instituted a new legal action and the securities have already been seized by the Sheriff. We find it unnecessary to decide this question for the cross-appeal is, in any event, lacking in merit.

Steinberg's argument is that the District Court should have effectuated its judgment under 28 U.S.C. § 2283 [20] by ordering the stockbroker to deliver Steinberg's securities to him and by enjoining Neifeld from further attempts to bring another Writ of Foreign Attachment by levying upon the same securities. The judgment entered by the District Court was that the Writ of Foreign Attachment was invalid by reason of the Sheriff's failure to seize the securities

and that Neifeld lacked personal or *in rem* jurisdiction over Steinberg. This was not an adjudication upon the merits (Rule 41(b)) and Neifeld was at liberty to sue again on the identical cause of action without fear that Steinberg could successfully raise the defense of res judicata. See LeJeune v. Leiblich, 19 Schulykill L.R. 74 (1922). Since Neifeld would not be barred by res judicata in maintaining the second suit filed by him against Steinberg, it would be anomalous if Steinberg could nonetheless enjoin Neifeld from bringing the second suit

Furthermore, Steinberg's reliance upon 28 U.S.C. § 2283 is misplaced for it only applies to a stay of a suit already instituted in a state court. It does not apply to injunctions against the institution of state court proceedings which is the type of relief Steinberg requested from the District Court. Dombroski v. Pfister, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); United Steelworkers of America v. Bagwell, 383 F.2d 492, 495 (4 Cir. 1967).

Finally, Steinberg ascribes a purpose to 12A P.S. § 8–317 which is manifestly unfair. He asserts that the mere procedural error of a sheriff in failing to seize securities prevents a plaintiff from correcting the error and suing again. Noncompliance with 12A P.S. § 8–317 should not cause such a harsh result. The reason why 12A P.S. § 8–317 requires a party to manually seize securities in order to effect a valid attachment is to foreclose all possibility of the security finding its way into a transferee's hands after an attempted attachment has been made. This policy has already been vindicated for we take judicial notice that the Sheriff manually seized the securities on September 24, 1969.

The order of the District Court denying Steinberg's request for injunctive relief will also be affirmed.

18. See note 5 *supra.*

19. See note 4 *supra.*

20. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."